# SUPREME COURT

## FANNIE E. MUSGRAVE agt. JOHN H. SHERWOOD.

*Injunction — Enlargement and alteration of building — Party wall — Tenement-house.*

On December 15, 1873, the defendant, being the owner of four first-class dwelling-houses and lots on Fifth avenue, immediately north of Forty-fourth street, in the city of New York, conveyed, by warranty-deed, to plaintiff, the third dwelling and lot north of Forty-fourth street. The lot thus conveyed was thirty feet in width on Fifth avenue and one hundred feet in depth, and the dwelling thereon was thirty feet wide and sixty feet deep. The southerly line of the plaintiff was the center of a party wall between the buildings of plaintiff and defendant. All four of the dwellings were first-class private residences, and plaintiff was assured by defendant that they would so remain, which assurance was one of the inducements which influenced the purchase. The title under which the defendant holds his property forbids the erection thereon of "a tenement-house." In 1875 defendant remodeled the interior of his two dwellings immediately south of that belonging to plaintiff, and converted them into an establishment known as a French flat or an apartment-house. He also extended his building in the rear to the depth of his lot and erected his wall, which was an extension of the old party wall, several inches upon the property of the plaintiff. He now proposes to erect two additional stories upon his two dwellings, in which erection, by adding to the height of the party wall, he really occupies and builds upon the land of plaintiff, removing the chimneys of her dwelling and otherwise interfering with her property.

*Held,* that the completion of the buildings as dwellings, the erection of the party wall between them in a finished state, and the positive declarations of defendant made to plaintiff at the time of the purchase, all show that the party wall, as it existed at the time of the conveyance to the plaintiff, was to be the completed wall between the two buildings. As there is nothing from which any agreement or right to add to the party wall can be inferred, and as all acts and promises point to an opposite one, the injunction asked for must be granted

Musgrave agt. Sherwood.

*Held,* also, that the conversion and change by defendant of his two houses into French flat or apartment-house is a violation of his covenant not to erect a tenement-house. A building which is to be occupied by tenants, in name and in fact, is clearly within the true meaning and definition of a *tenement-house.*

The case of *Brooks* agt. *Curtis* (50 *N. Y.*, 639) distinguished.

*At Chambers, July,* 1877.

APPLICATION by plaintiff for an injunction restraining the defendant in the enlargement and alteration of certain buildings in the city of New York which adjoin the dwelling of the plaintiff.

*William A. Beach,* for plaintiff.

*H. B. Turner,* for defendant.

WESTBROOK, *J.*— This application involves questions of so much importance as to cause us to regret that owing to the pressure of business and the need of a speedy decision, no elaborate discussion thereof can be attempted. A very hasty outline of the reasons which compel us to grant the temporary relief asked by the plaintiff can only be given.

Prior to December 15, 1873, the defendant was the owner of four first-class dwelling-houses and lots, situate on the easterly side of Fifth avenue, in the city of New York, immediately north of Forty-fourth street. On that day he conveyed, by warranty deed, to the plaintiff the third dwelling and lot north of Forty-fourth street aforesaid. The lot thus conveyed was thirty feet in width on Fifth avenue and 100 feet in depth, and the dwelling thereon was thirty feet wide and sixty feet deep. The southerly line of the plaintiff was the center of a party wall between the buildings of the plaintiff and the defendant. At the time of the sale to and purchase by the plaintiff, all four of the dwellings were first-class private residences, and the plaintiff was assured by the defendant that they would so remain and continue, which

assurance was one of the inducements which influenced the purchase. It is true that the defendant denies that any such statements were made, but the positive evidence of the plaintiff and her husband induce us to believe that the defendant, in such denial, is mistaken.

In the year 1875, the defendant remodeled the interior of his two dwellings immediately south of that belonging to the plaintiff, and converted the same into an establishment known as a French flat or an apartment-house. To this alteration the plaintiff objected, though the exterior of the buildings was not changed. He also, at the same time, extended his building in the rear to the depth of his lot, and erected his wall, which was an extension of the old party wall, several inches upon the property of the plaintiff. He now proposes to erect two additional stories upon his two dwellings, in which erection, by adding to the height of the party wall, the defendant really occupies and builds upon the land of the plaintiff, and in so doing removes the chimneys of her dwelling and otherwise interferes with the property of the plaintiff, and these acts she seeks to enjoin and prevent.

As the defendant is about to use and occupy a part of the plaintiff's premises in his erection, it is evident that such occupation is unlawful, and must be restrained, unless his rights growing out of the party wall between the two buildings enable him so to do. *Brooks* agt. *Curtis* (50 *N. Y.*, 639) is the authority relied upon by defendant to justify his contemplated action. A careful reading of that case, however, will show that upon the circumstances attending the construction of the party wall the court based its decision, holding that it had not been permanently established, but that, on the contrary, it had been erected under such circumstances as to imply the right of further and other additions and use. When the plaintiff in that case took his deed the store upon his lot was unfinished and the lot of the defendant was not built upon. From these facts the learned judge (RAPALLO) might well say, as he did say (*page* 642): " We think that

Musgrave agt. Sherwood.

the language of the deed and the acts of the parties show that it was their intention that the wall should be a party wall for the common use of both lots;" and hence it follows that, as the use was undefined and unlimited by any act or declaration of either party, its use in any particular way was not unlawful.

Not so, however, in this case. The completion of the buildings as dwellings, the erection of the party wall between them in a finished state, and the positive declarations of the defendant made to the plaintiff at the time of the purchase, all show that the party wall, as it existed at the time of the conveyance to the plaintiff, was to be the completed wall between the two dwellings. As there is nothing from which any agreement or right to add to the party wall can be inferred, and as all acts and promises point to an opposite one, the contemplated use of plaintiff's premises by defendant must be enjoined for this reason.

This application also involves another question. It was conceded on the argument that the title under which the defendant holds his property forbids the erection thereon of "a tenement-house," and thus the point is presented whether or not the conversion and change by him of his two houses into a French flat or apartment-house, is a violation of this covenant. The point is not free from difficulty, but reflection has satisfied me that the proposed erection is within both the spirit and the letter of the expression. The obvious object of such a provision was to free the premises from the confusion and disquiet which must surround any building which is the abode of several distinct families. That the grantor intended to dedicate and preserve the property to and for the use of first-class private dwelling-houses is clear; and while it is conceded that the annoyance and discomfort arising from the occupation of defendant's structures for the purposes designed would be somewhat less than if they were to be the abodes of the poorer classes, it is still manifest that the distinction is in degree and not in kind. The bustle, con-

Musgrave agt. Sherwood.

fusion and want of privacy which the grantor intended to guard against, would necessarily be present, and to that extent, at least, his intention would be defeated.

It was strenuously urged by the defendant that the expression, " tenement-house," must be confined in meaning to the abodes of poor families who, as tenants, occupy a single building. One difficulty attending this definition is, that there is no fixed standard by which poverty and wealth can be measured. How many dollars must an individual have to be entitled to be called rich, and how few must he possess to be regarded as poor? Will the name of the building change as its occupants change? Manifestly, it seems to me, not. Some other definition than one which shifts and changes with the families occupying it must be sought for. The word " tenement," according to Bouvier (*Bouvier's Law Dictionary, vol.* 2, *p.* 583), in its larger sense, " comprehends every thing which may be holden, provided it be of a permanent nature." According to the same author it also signifies a " house or homestead," and as defined by Jacobs in his law dictionary, which Bouvier quotes, " rooms let in a house." The compound word " tenement-house " must, therefore, signify and mean a house with distinct tenements or homes, which separate and different families or persons occupy as tenants. Not merely a boarding-house or hotel, for in these the occupancy is not one of tenancy, but that of guests or boarders.

It was conceded upon the argument that, whilst a common table and laundry is to be provided in the structure of the defendant, for the accommodation of its occupants, if they wish to use them, yet that the various copartments are let and rented to them, they paying a sum in money as the rent thereof. No reason occurs to me why, literally and truly, the building of the defendant, which is to be occupied by tenants, in name and in fact, is not clearly within the true meaning and definition of a " tenement-house." The injunction asked for must also for this reason be granted.

Musgrave agt. Sherwood.

The court is not insensible to the damage which the granting of this provisional remedy will do to the defendant, provided it be held in the end that the injunction should have been refused. The right to the temporary relief depends upon no disputed fact, and, in my judgment, such right is not doubtful. The Code (*section* 219) requires its issue " when it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to the plaintiff." Within this provision the plaintiff, it seems to me, has fairly shown herself to be, and her prayer for relief must be granted.

The remedy sought is the more readily approved because the important questions which this case involves should be settled before the building is completed. It is better for the defendant to stop now, if he is in the wrong, than to expend a large sum of money, which will be entirely wasted if the building must, in the end, be restored to its original condition.

The plaintiff must, however, give such security as will be sufficient reasonably to indemnify the defendant, if it be determined that the injunction improvidently issued. The relief asked for will be granted upon an undertaking, with sufficient sureties, in the sum of $15,000.